# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| LETONIA MCKNIGHT, | : | Bankruptcy No. 04-18954DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Debtor's Objection to the Proof of Claim filed by Bank of America N.A. ("Bank") for arrears in the amount of $27,930.91.[1] Contemporaneously with the Objection, the Debtor filed Requests for Production of Documents (the "Requests") to which the Bank filed a response (the "Response to Requests") attaching certain documents thereto.[2] The Debtor challenges the monthly payments, late charges, escrow shortage,

---

[1] At the hearing, Bank's counsel reduced the arrears by crediting Debtor with an additional sheriff's refund bringing the total arrears from $28,685.91 to $27,930.91.

[2] The hearing on the Objection was continued from February 10, 2005 until March 24, 2005 to allow for the production of the requested documents.  In addition to the documents attached to Bank's Response to the Request, Bank's counsel indicated, and Debtor's counsel did not deny, that it had provided a payment history from the inception of the loan to the present bankruptcy case. However, at the time of the hearing the Debtor complained that the Bank had not produced the requested disclosure statement under the Truth in Lending Act which was sought in the Request. Counsel for the parties disagreed as to whether Bank had produced documents regarding the escrow analysis.

Counsel for the Debtor and counsel for the Bank are frequent combatants on proof of claim
(continued...)

sheriff's deposits and various other expense reimbursements sought. Debtor also asserts a recoupment damage claim under the Truth in Lending Act ("TILA") which in turn forms the basis for her counsel's request for attorney's fees.

**BACKGROUND**

Debtor filed this Chapter 13 case, her fourth, on July 1, 2004. The first case was filed on April 1, 2001 and dismissed on October 22, 2001. Contrary to Debtor's testimony, it was not dismissed for failure to appear and file the required documents as the docket reflects that both these requirements were satisfied.[3] Rather the motion of the Chapter 13 trustee

---

(...continued)
objections. In prior cases where a claim was at issue, Debtor's counsel has objected to the admission of the mortgage company's documents without a witness authenticating them. The mortgage company is reluctant to bring a witness as it imposes a significant financial cost disproportionate to the economic consequence of the disputed issues, a cost which ultimately must be borne by the debtor if her loan achieves a reinstatement status and by the mortgage company if it does not. Bank's counsel states that most counsel appreciate this fact and take a practical approach to the resolution of claims objections, exchanging documents and pressing for a hearing when the records do not support the claim or the charges do not appear reasonable based on the case history. He complains that Debtor's counsel is acting in bad faith by wholesale objections to otherwise credible and detailed proofs of claim which require a witness to support charges that Debtor's counsel knows are normal in lending and collection practice and for which Bank has produced documents. As I reminded counsel, there is a remedy for such conduct when it exists. Every document presented to this Court, including a discovery request, response, or objection thereto, is a certification by the debtor and her counsel that after reasonable inquiry, it is not presented for any improper purpose, such as to harass or needlessly increase the cost of litigation, and the objection is warranted by existing law. Fed.R.Bankr.P. 9011. The evidentiary burdens of claim litigation are not blind to the litigant's responsibilities under Rule 9011.

[3] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

(continued...)

(the "Trustee") to dismiss was granted. The second case was filed on February 4, 2002. On July 2, 2002 the Trustee filed a motion to dismiss for failure to make plan payments which was continued multiple times to allow a resolution of Debtor's objection to Bank's claim in that case. On October 17, 2002 Debtor reported the claim objection settled and advised the Court that an amended proof of claim and amended plan were to be filed. However, on January 2, 2003 the second case was dismissed for failure to make Trustee payments.[4]

The third case was filed on May 5, 2003. On June 16, 2003 Bank was given relief from the automatic stay with a 180 day bar, and Debtor's motion for reconsideration was denied. However a subsequent motion to reinstate the automatic stay was granted on September 18, 2003 on the condition that Debtor tender all post-petition arrears in the amount of the July, August and September payments to the mortgagee.[5] Shortly thereafter, the Trustee filed a motion to dismiss which once again was continued pending an objection to Bank's claim. On March 4, 2004 the claim objection was settled once again, and the docket reflects a consent to be filed to a proof of claim in the arrearage amount of

---

(...continued)
I have referred to the dockets as they appear in the Court files and not as Bank's counsel admitted them (without objection) since they contain written notations of facts not elicited at the hearing.

[4] The docket states the cause of dismissal to be the failure to attend the § 341 meeting, an error resulting from the unfortunate clerical practice of linking docket entries to other prior entries. It is clear that a § 341 meeting was held on April 25, 2002, and that the Trustee's adjourned motion was based on payment arrears.

[5] A check in the amount of $2,128.44 was tendered to the Bank. Doc. No. 32.

$21,970.93. Nonetheless, the case was dismissed on the same day on a Trustee's motion based on plan infeasibility. While Debtor's counsel filed an emergency motion for reinstatement of the case and secured a hearing thereon for July 1, 2004, Debtor retained new and her present counsel on June 28, 2004 who withdrew the emergency motion and filed her fourth case on July 1, 2004, thereby avoiding the Court's ruling.

In this case, the fourth, Bank once again filed a motion to dismiss or for relief from stay and reached a stipulated settlement. Debtor proceeded once again to object to Bank's claim, and Bank to object to confirmation. On February 22, 2005 the Trustee filed a motion to dismiss the case with prejudice which was continued once again pending resolution of the Objection.

Bank's proof of claim identifies by date and amount a total of 23 missed payments. At the hearing on the Objection, the Debtor testified that she thought she owed 17 or 18 monthly payments. She recalled owing four payments to the Bank on the date of her first case and admitted that she had made no payments to the Bank between cases. She contended that she remained current with Bank and Trustee during all her cases. Additionally she objected to the late charges on the additional five or six months she contends she does not owe. She objected to the $10,000 expense reimbursement of five sheriff's sales, only recollecting four to have been scheduled. She challenged the escrow arrearage, stating that she was always current on her taxes and insurance and further that she did not know how the escrow shortage was determined.

Finally her counsel asked her whether she had received a TILA statement when her loan was made in 1997. She answered in the negative only to reveal in cross examination that she did not know what a TILA statement is.

Her present Chapter 13 plan requires payments of $400 per month, and Debtor acknowledges it would be hard to pay more. It would be "pushing" at $450. If the claim is allowed as filed, her plan could have to be increased beyond her ability to pay. Pending the liquidation of this claim, the Debtor's confirmation hearing and the Trustee's motion to dismiss were continued until May 26, 2005.

**DISCUSSION**

Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the claim. Amatex Corporation v. Aetna Casualty & Surety Co., et al., 107 B.R. 856, 870 (E.D. Pa. 1989), aff'd, 908 F.2d 961 (3d Cir. 1990); In re Wall to Wall Sound & Video, Inc., 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. In re Wells, 51 B.R. 563, 566 (D. Col. 1985). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. Id. "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claims legal sufficiency." In re Allegheny International, Inc., 954 F.2d 167, 173 (3d. Cir.

1992). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. Allegheny International, 954 F.2d at 174; Wall to Wall Sound, 151 B.R. at 701. Where the evidentiary record is inconclusive, the application of these burdens will to a large extent determine the outcome of the dispute.

The proof of claim attaches a two page exhibit (the "Statement") which itemizes, inter alia, the pre-petition arrearage claim according to its components.[6] It lists monthly payments by date and amount and total accrued late charges. It also lists expenses incurred as follows: record owner lien certificate, escrow shortage, filing of complaint, service of complaint, foreclosure fees, sheriff's deposit by total amount and number; sheriff's refund by total amount and number, NSF fee, notice of sale by total amount and number, notice to reassess damages by total amount and number, title bringdown by total amount and number. The proof of claim fulfills the requirements of Rule 3001(f).

As noted above, in order to rebut the evidentiary effect of the filed claim, Debtor must present evidence of equal probative force to the allegations of the proof of claim. The Debtor's testimony was the sole evidence put forth. Debtor stated that 17 or 18, not 23 payments were overdue. In support, she contended that she had made all payments to Bank and Trustee while she was in her three prior bankruptcy cases and her arrears arose before the first filing and only between cases. She presented no documentary support for her statement but its veracity could easily be tested by examining the dockets in these cases. In case after case, there were motions to dismiss and motions for relief, which would not

---

[6] It also provides a detailed itemization of the total indebtedness.

-6-

have been filed had the Debtor's payments been timely. The Trustee who administered her plan payments also took issue with her contention that she never missed a payment and questioned Debtor as to whether she was aware that she had made no payments in the 2002 case. She said that she was not, attributing any deficiency to her prior counsel.[7] Finding her testimony of missed payments not credible, I conclude that Debtor has not rebutted the *prima facie* validity of the proof of claim which asserts 23 missed payments by date and amount.[8] As Debtor's principal objection to the late charges was that Bank's number should be reduced consistent with her position as to the amount of monthly payments missed,[9] and as I have found Bank's payment statement unrebutted, that component of the objection also will be overruled.

---

[7] It is true that her prior counsel exacerbated Debtor's problems. She failed to file answers and to appear on contested motions so that defaults were entered. Her practice was then to file motions for reconsideration. I have given Ms. McKnight deference because of the deficiencies of her prior counsel. However, it is she, not her attorney, who is responsible for making the payments.

[8] Bank's counsel argues that its position can readily be established by reference to the Stipulation reached in the 2003 case. While the Stipulation inexplicably was not made part of the record given counsel's belief that it provided a simple answer to this contested matter, the docket in that case reflects a settlement of the proof of claim in the amount of $21,970.93. Bank's counsel argues that the stipulation is based on a contractual due date of December 2001 and as Debtor made ten payments in the 2003 case, she is now due for September 2002 as stated in the proof of claim. Assuming I would even rely on a docket entry as evidence, I am at a loss as to how I am supposed to extract the contractual due date therefrom. While this might be another way to get to the final answer, the evidentiary record was not made for me to do so.

[9] Debtor's counsel also claims that Bank did not meet its evidentiary burden of showing how they were calculated. I am unpersuaded that this contention is sufficient to shift the burden to Bank. The Statement shows 23 late payments aggregating $1,205.75 or, by reason of simple arithmetic, a monthly late charge of $52.34. The Response to the Request provided the Mortgage and Note from which the Debtor can verify the amount of the charge. Had Debtor applied the contractual charge and reached a different number, her objection would have shifted the burden to Bank to sustain the claim. However, she does not contend the number is wrong but rather relies on her view that Bank needed to do more. I respectfully disagree.

In this case, the Objection challenged every single expense on the Statement as being excessive, duplicative and/or not clearly itemized. While her counsel conceded at the hearing that the filing and service of complaint and foreclosure fees were not objectionable and withdrew those components of the Objection, Debtor maintained her objection to the other expenses. Other than the sheriff's sale expense, there was nothing in the record as to why the expenses were excessive, duplicative, unnecessary or required itemization. Debtor challenged the sheriff's sale expense, contending that the number of sales for which expenses were allegedly incurred by Bank was incorrect. Bank claims five sales and its proof of claim is internally consistent in supporting that number. It includes five sheriff's deposits and five notices of sale. It only credits four sheriff's refunds but states that upon receipt of a further sheriff's refund, it will amend the proof of claim to give the Debtor the credit it received. At the hearing that commitment was fulfilled when the claim was reduced by increasing the sheriff's refund credit from $3,299.03 to $4,053.85 to account for a fifth sheriff sale.[10] On the other hand, Debtor recalls only four sheriff's sales drawing solely upon

---

[10] The dispute about the number of sheriff's sales scheduled is a perfect example of an objection that should not come before me. While not introduced as documentary exhibits at the hearing, Exhibit B to the Response to the Request evidences the five deposits Bank's counsel charged back to Bank on account of five scheduled sales. These documents were provided to counsel, and he still pressed this court to conclude that there were not five sales. Ironically, his client testified that there were four sales but he believed, based on his analysis of what should have happened, that there were only three and urged the court to so conclude. When I noted that he could not amend his client's testimony, he advised me that his client did not know how many were scheduled so I should not believe her. Of course, I have concluded precisely this with respect to other statements she has made, and I have discounted Debtor's testimony as her counsel suggested.

This dispute also illustrated another problem with the objections pressed by Debtor's counsel. Like the sheriff's sales that counsel concluded could not possibly be scheduled with the frequency claimed by Bank, counsel also argued that title bring downs and a record lien search obtained by Bank were not necessary and therefore are not compensable. He would have the court
(continued...)

her memory as support for her position. Given counsel's concession and my observation of Debtor's memory, I am not persuaded that Debtor's testimony of the number of sheriff sales is of equal probative force to rebut the proof of claim and supporting documentation.[11]

With regard to the other components of the Objection, as to which the Debtor has produced no evidence, I recognize that it is generally accepted that certain claims are not self-sustaining. A debtor's objection will shift the burden to the claimant to produce evidence where the claim is not properly explained or supported by the filed proof of claim. That is not the case where, as here, the claimant supports its claim with a detailed summary,[12] and then produces documents that evidence that the charges have been made. Included in Exhibit B to the Response to the Request are actual bills by Federman & Phelan to Bank. They evidence actual charges for the record lien search ($250), two motions to reassess damages ($600) and three title bring downs ($225) which, as noted above, Debtor's counsel argued were unnecessary and excessive. The documents, although attached to filed pleadings, were not made part of the evidentiary record at the hearing. I can, however, note

---

(...continued)
substitute his judgment for that of the lender and disallow these actual business expenses based on his expertise. Debtor's counsel never contended that the expenses were not incurred (as well he could not given the production of documents that support same, Exhibit B to Response to the Request) so the only objection went to the necessity of the charges. Absent something more than counsel's opinion on the subject, I am satisfied that the production of documents that establish that the expenses were actually incurred and charged is sufficient.

[11] When questioned by Bank's counsel with specific dates of sale, she could only remember one of the two he claimed took place in 2003.

[12] A summary is acceptable in lieu of voluminous documents so that the actual expense statements need not be produced. In re Armstrong, 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005); In re Cluff, 313 B.R. 323, 334-35 (Bankr. D. Utah 2004). It must, however, contain the requisite information to allow the debtor to understand the basis for the claim.

that these documents were produced in response to the Request. Given that these charges are commonly found in proofs of claim filed by mortgage companies that I routinely see, Fed.R.Evid. 201, and given that Debtor has received the documentation supporting them, these components of the claim are self-sustaining, and Debtor needs to do more than merely generally object to shift the burden back to Bank. Since Debtor has not done so, these charges will be allowed.

On the other hand, if a claimant fails to produce the documents or the documents produced do not substantiate the claim, the claim will not be accorded *prima facie* validity in the face of an objection, i.e., the claim is not-self-sustaining. Such is the case with the NSF fee of $41.65, which was objected to as unauthorized by the mortgage and "duplicative of a late charge." I am persuaded by the former argument and find that Bank should have come forward with the mortgage agreement or other authorization for imposing this charge upon Debtor. The NSF fee will be deducted from the allowed proof of claim.

One other expense claimed that may not be self-sustaining is the escrow shortage of $2,093.17. In her Request, the Debtor sought all documents which support calculation of the Claim and specifically referenced any records of charges being added as an escrow deficit. Request ¶ 3. Whether that information was included in the payment history provided to Debtor as part of the Request is unknown to me since the payment history was not made a part of the record. I do know that the escrow information was not included with the documents provided with the Response to the Request which appear to be invoices generated by Bank's counsel. However, Bank's counsel insisted at the hearing that documents

responsive to this issue had been provided. The Debtor presented no evidence on the escrow issue other than stating that she had made all tax and insurance payments, a statement proven to be untrue, and that she did not know how the escrow shortage was determined.[13] She was not asked whether she had been provided with periodic statements of the escrow deficit. While Debtor's counsel conceded at the hearing that the charge could be "possible," he pressed Debtor's objection contending Bank failed to sustain its burden on this point. As the calculation of an escrow shortage can be incomprehensible, this expense requires more than the mere number contained in the Statement. However, as I cannot discern whether Bank has produced its analysis to the Debtor, I will defer ruling on that component of the claim. If Bank has done so, Debtor's objection which is based on lack of an explanation will fail. If it has not, the objection will be granted since the claim is not self-sustaining over the Debtor's objection.

Finally the Debtor has failed to carry her affirmative burden under TILA for damages by reason of her statement that she did not remember receiving a TILA disclosure statement. Her recollection was particularly dubious absent any testimony that she actually searched for and reviewed her own records. If her testimony was not transparently self-serving, her response that she did not know what such a statement looked like was. I do not consider

---

[13] The Objection prepared by Debtor's counsel stated that the escrow shortage appeared duplicative as the amount of the escrow is included in interest and principal which is already in the claim. I do not understand how that conclusion could be reached since anyone who understands how escrow accounts work, as Debtor's counsel certainly does, recognizes that adjustments are made retroactively to escrows to account for tax increases. In any event, the duplication theory was not pursued at the hearing.

that testimony to have been sufficient to require Bank to produce evidence that it had sent such a document.[14]

For the following reasons, the Objection is denied. The proof of claim for arrears is allowed in the amount of $25,796.09 without prejudice to the Bank supplementing the record within ten (10) days to produce the document(s) it supplied to the Debtor regarding the escrow deficit.[15] An Order consistent with this Memorandum Opinion shall be entered.

 

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: May 23, 2005

---

[14] Assertion of a TILA counterclaim joined with a request for counsel fees appears to be part and parcel of the form claim objection routinely filed by Debtor's counsel. The latter relief appears to be sought with the hope and likelihood that the creditor will not be able to locate a copy of the disclosure document and not because the debtor truly believed she had or had not received the document.

[15] The Plan is funded to pay the Trustee $24,000. At a minimum the Debtor will have to increase her plan payments to cover the Bank's $25,796.09 allowed claim plus the Trustee's 7.7% commission over the remaining 50 months of the plan. This court expects such an amendment to be addressed at the May 26 hearing, and the June payment made consistent therewith.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| LETONIA MCKNIGHT, | : | Bankruptcy No. 04-18954DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 23rd day of May 2005, upon consideration of the Debtor's Objection to the Proof of Claim filed by Bank of America N.A. ("Bank") for arrears in the amount of $27,930.91, after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1. The Objection is **DENIED**.

2. The Proof of Claim for arrears is allowed in the amount of $25,796.09 without prejudice to Bank supplementing the record by **May 31, 2005** to produce the document(s) it supplied to the Debtor regarding the escrow deficit.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

<u>In re Letonia McKnight - Bankruptcy No. 04-18954DWS</u>

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA  19073

Jacqueline M. Chandler, Esquire
Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107